Parker, J.
It may be doubted whether Lucy Wood, the appellant’s intestate, would, under any circumstances, have been liable to the appellee for the debt which she authorized her son “ to collect or dispose of,” since there is no evidence that it was to be done for her benefit, and the probability being, both from her own letter and that of her son to M'Craw, that it was a gift to her son. The bill does not charge that she assigned *10 her claim for value; there is no proof that she did so; * her son speaks of Ais being bound, but says nothing of Aer liability over; and her letter to M’Craw does not , t purport to be an assignment of the claim, but a mere annunciation to her attorney of the fact that she had authorized her son to collect or to dispose of it, in order, no doubt, to satisfy M’ Craw of her son’s right to call upon him for a settlement, unless he disposed of the debt to another. It would be difficult, I think, under these circumstances, to charge her even if the appellee had diligently pursued M'Cravo.
But, without pressing this point, I am of opinion that, in the events which have happened, neither of the Woods can be charged. The letters addressed by them to M’Craio are no more than orders on their agent or attorney, for money; imposing on the writers the ordinary responsibility of drawers of such paper, and no more. If the fund had been collected and in the hands of M' Craw, their accepted drafts would have imposed upon the holders the obligation, at least, to demand payment, and in case of refusal, to give notice to the •drawers, in order to enable them to take the proper-steps for their security: the holders could not lie by for years, and then resort to the Woods, or either of them. The law is the same where the fund is to be collected. M ’ Craw, upon accepting the order, became liable to pay to the transferees as soon as he received the amount of the debt. The money was received in July 1815, and there is no evidence of M’ Craw's insolvency until March 1820. In the meantime, the whole debt belonging to the appellee or to the holders of the orders, they might control M'Craw in the collection; and if they permitted him to receive it, he might instantly have been sued at law upon his acceptance, or the orders been returned, with notice to the drawers of his default. It was their duty to ascertain when the money came into his hands; and then to take the proper steps to en *11 force payment, or to return the orders, and enable the drawers to charge M’Craw. Instead of this, it is not shewn that they took any efficient steps to recover the money from M’Craw, or gave any notice of his default to either of the Woods, until the filing of this bill in November 1822; more than seven years after M ’ Craw had collected the debt. All this appears upon the face of the bill itself.
I am therefore of opinion, that the decree of the circuit superiour court should be reversed, and the bill, as to both the Woods, dismissed.
Brooke, J.
As it does not appear that mrs. Wood received any consideration for her order on M’Craw her attorney, in favour of her son William Wood, she was not responsible to the plaintiff, or to any of the intermediate assignees of the order. That William Wood was responsible, appears by the terms of his assignment of 1200 dollars with interest, which, he says, he had “traded” to Woodson, “and for which he was bound.” M’ Craw accepted the order in 1807, and collected the money in 1815. From that time we hear nothing of any demand upon him by any of the parties through whose hands the order had passed, nor of any notice to either of the Woods that M’Craw had refused to pay, until 1822, when this suit was brought. Treating the case as an ordinary assignment of a debt, I perceive no ground for coming into a court of equity. After an acceptance of M’Craw, and the receipt of the money by him, it was no longer a mere equitable assignment as to him ; he became a debtor at law; and it appears by the bill, that the plaintiff so considered him ; for he brought his suit at law, and dismissed it, because, as he says, he could not establish his claim in that forum, but more probably, I think, because M’Craw had become insolvent. However that may be, the great delay in giving notice to mrs. Wood, if she *12 Was bound, and to William Wood, who was bound, that M’Craw, after the acceptance of the order and the receipt of the money, had refused to pay it, was, I think, such laches as exonerated them from any responsibility for the failure of M’Craw to pay the order. The plaintiff is not entitled to recover in any forum. The decree should be reversed, and the bill dismissed, both as to Lucy Wood’s representative, and William Wood’s, though the latter has not appealed.
Tucker, P. concurred. Decree reversed, and bill dismissed.